IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | CRIMINAL NO. 17-43 |
| vs. | ) | |
| **SIDNEY PACK,** | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.     Introduction

Defendant Sidney Pack ("Pack" or "defendant") filed a motion to suppress evidence (ECF No. 58). The government filed a response in opposition to the motion. On October 8, 2019, the court held an evidentiary hearing. The parties were permitted to file proposed findings of fact and conclusions of law. The parties filed those post-hearing submissions on November 25, 2019. Pack filed a reply on December 2, 2019. The motion to suppress is ripe for disposition. There is no need for additional evidence or argument.[1]

II.     Factual and Procedural Background

Pack is charged in a two-count indictment at Criminal Number 17-43 with: (1) possession with intent to distribute a quantity of fentanyl; and (2) possession of a firearm in furtherance of a drug trafficking crime. These charges arise out of a traffic stop and subsequent search incident to arrest conducted on December 31, 2016.[2]

---

[1] Defendant's motion for relief (ECF No. 72) is not fully briefed and will be addressed by separate order.
[2] Pack is facing separate criminal charges at Criminal Number 18-204, in which he is charged with a RICO conspiracy.

Pack argues perfunctorily that the traffic stop on December 31, 2016, was without reasonable suspicion. The primary focus of his suppression motion, however, is that police officers conducted an illegal entry of a home on December 8, 2016. Defendant argues that the allegedly illegal search on December 8, 2016, tainted the events on December 31, 2016, because the officers who conducted the traffic stop were aware that the home search on December 8, 2016, was the basis for the arrest warrant they executed on December 31, 2016.

### **Findings of Fact**

1. Pittsburgh Police detectives Devin McGee ("McGee") and John Baker ("Baker") testified at the hearing. Both detectives offered credible testimony. The government submitted four exhibits and the defense submitted three exhibits.

   A. <u>The events of December 31, 2016</u>

2. On December 31, 2016, McGee was working as a plainclothes detective in Zone 2 in Pittsburgh, Pennsylvania. On that date, he was working with Baker and officer Josh Robey ("Robey"). (Tr. 17-18).

3. The officers were patrolling Zone 2 in an unmarked patrol car which was equipped with lights and siren. (Tr. 18).

4. At approximately 12:30 p.m. on December 31, 2016, the officers were traveling along Bedford Avenue, which runs from the Pittsburgh downtown/business district through Pittsburgh's Hill District, at which time McGee noticed a gold in color Toyota vehicle bearing Pennsylvania registration KGF3311 (hereinafter the "gold Toyota"). (Tr. 20).

5. The officers were not familiar with the vehicle. (Tr. 97).

6. The officers were near 1634 Bedford Avenue, where they believed Pack lived, when they encountered the gold Toyota. (Tr. 96).

7. The officers' patrol vehicle was positioned directly behind the gold Toyota as they drove up Bedford Avenue. (Tr. 20, 24).

8. The officers observed the gold Toyota fail to stop at several clearly posted stop signs. McGee was aware that Section 3323 of Pennsylvania's Motor Vehicle Code governs a driver's duties at a stop sign, and that section requires a motorist to bring his or her vehicle to a complete stop at posted stop signs. (Tr. 22-23).

9. The gold Toyota first rolled through the stop sign at the intersection of Bedford Avenue and Roberts Street. The officers did not initiate a traffic stop at that time because they were running the gold Toyota's information through their mobile computer and were waiting for the information to come back, which is standard police practice.[3] (Tr. 23).

10. The officers continued to follow the gold Toyota up Bedford Avenue and it failed to come to a complete stop at the intersection of Bedford Avenue and Devilliers Street. The officers did not initiate a traffic stop at that time because their mobile computer was still processing the information associated with the gold Toyota. (Tr. 23).

11. At the intersection of Bedford Avenue and Erin Street, the gold Toyota failed to stop at the clearly posted stop sign at that intersection, rolled through at a slow rate of speed and made a right-hand turn onto Erin Street. (Tr. 24).

12. At that time, the officers initiated a traffic stop on the gold Toyota by activating their unmarked patrol vehicle's lights and siren. (Tr. 24).

---

[3] Pack is permitted to supplement the record with a document purporting to show that unknown police officers ran the gold Toyota's plate at 12:25 p.m. that day. (ECF No. 75 at 4). That fact does not change the court's analysis.

13. The gold Toyota pulled over onto the right side of Erin Street. The officers pulled behind it. (Tr. 24).

14. The officers did not know Pack was in the vehicle. (Tr. 99).

15. As the officers parked and got out of their vehicle, the front passenger door of the gold Toyota opened and an individual whom McGee recognized as Pack exited. (Tr. 24).

16. McGee was familiar with Pack's physical appearance prior to December 31, 2016, through social media postings and because he knew Pack to be wanted on an arrest warrant. (Tr. 25).

17. McGee knew there was an active arrest warrant for Pack because he stayed in contact with detective Andrew Shipp ("Shipp"), who had filed the arrest warrant, about open cases and constantly checked the ASAP system, the computer system used to manage paperwork and warrants. (Tr. 26).

18. Baker knew there was an active arrest warrant for Pack and was familiar with Pack's appearance because he was a member of a "Violent Crime Response Team" ("VCRT"), which circulated photographs of persons of interest. (Tr. 85).

19. The officers began to exit their patrol vehicle, at which time Pack looked directly back at them and began to run. (Tr. 24).

20. McGee yelled, "Sid, stop!" and pursued after him. (Tr. 24).

21. Pack ran from the gold Toyota, but slipped and fell on mud, at which time McGee jumped on him and took him into custody. (Tr. 27-28).

22. McGee searched Pack incident to his arrest on the warrant and recovered bundles of heroin that fell from Pack's pockets, a firearm that was caught underneath his shirt, two cell phones and a bag of marijuana. (Tr. 28-29).

23. The heroin and firearm are the basis for the criminal charges in this case, Criminal Number 17-43.

24. Pack was transported to the Allegheny County Jail on both the outstanding arrest warrant and the additional charges from the evidence recovered on December 31, 2016. (Tr. 29).

25. McGee testified that he prepared an electronic citation for the driver of the gold Toyota, identified as Gillette Hawkins, for a violation of Section 3323 of Pennsylvania's Motor Vehicle Code relating to stop sign violations. (Government Ex. 3). It was not McGee's responsibility to file the citation. (Tr. 76-77).

26. The citation was never filed. (Defendant Ex. 3).

   B.  <u>Connection between the events of December 8, 2016 and December 31, 2016</u>

27. McGee, Baker and Robey were part of a VCRT composed of approximately twelve officers that were detailed to Pittsburgh's Hill District due to an increase in shootings. Officers Shipp, Gary Messer ("Messer"), Tomer and Montelone were also part of the VCRT.

28. As set forth in the affidavit of probable cause for a search warrant, with Shipp and Messer as affiants, there was a non-fatal shooting on December 8, 2016 at 2:30 p.m. The victim was a known Wavy Boy gang member. (Government Ex. 2).

29. Based on intelligence gathered over the past few months, the officers knew that the Wavy Boys had an ongoing feud with the 11 Hunnit Gang. *Id.*

30. Pack was a known member of the 11 Hunnit Gang. *Id.*

31. At 4:00 p.m. on December 8, 2016, Officers Messer, Shipp, Tomer and Montelone began surveillance on what they believed to be Pack's residence at 1634 Bedford Avenue.[4] *Id.*

---

[4] Pack denies that he lived there, but maintains that he had a reasonable expectation of privacy in the home such that he has standing to challenge the search.

32. On December 8, 2016, McGee was with Officers Berberich and Robey in a patrol vehicle.

33. At approximately 8:05 pm, approximately four hours after surveillance began, Messer advised McGee via radio that a male left 1634 and was on foot on Gilmore Way, one-half block from 1634. Messer believed the male was armed because he appeared to be adjusting a heavy object in his right jacket pocket. (Government Ex. 2).

34. McGee, Berberich and Robey responded, encountered a person later identified as Julian Crosby ("Crosby"), noted a strong odor of marijuana, conducted a pat down, and found a bag of marijuana in Crosby's left jacket pocket and a firearm in his right jacket pocket. The officers arrested Crosby and advised the surveilling officers about the encounter.

35. Officers Shipp, Messer, Tomer and Montelone approached 1634 Bedford Avenue to investigate the possible sale of narcotics. (Government Ex. 2).

36. Officers Shipp, Messer, Tomer and Montelone observed two males through the window, one of whom answered the door and appeared nervous. The officers heard other people moving in the upstairs of the residence. *Id.*

37. The two males were detained in anticipation of obtaining a search warrant for 1634 Bedford Avenue. Tr. 40-41, 59.

38. Officers Shipp, Messer, Tomer and Montelone entered the residence to prevent destruction of evidence. Inside were Pack's mother, Tenese Pack, and four juvenile children ranging from age 1 to age 14. (Government Ex. 2).

39. While conducting the walk-through, Officers Shipp, Messer, Tomer and Montelone observed a handgun, a scale, Xanax® and heroin. *Id.*

40. McGee, Baker and Robey were not present and did not participate in the entry into the 1634 Bedford Avenue residence or the walk-through.

41. There is no evidence that Robey had any further involvement on December 8, 2016, except the encounter with Crosby.

42. Baker was part of the VCRT on December 8, 2016, and responded to 1634 Bedford Avenue as a backup. Baker provided no information that was included in the search warrant or arrest warrant for Pack. (Tr. 86-87).

43. McGee was not involved in the decision to obtain a search warrant. (Tr. 41).

44. McGee met Shipp later in the evening of December 8, 2016, at Zone 2 while Shipp was preparing the search warrant and typing a narrative of probable cause. (Tr. 40-41, 59).

45. McGee performed clerical tasks to assist Shipp with the application. McGee put the cover sheet together, the address, "identifiers" and possibly the items to be searched for. McGee obtained the necessary information from Officer Shipp. McGee does not remember whether he reviewed the affidavit, but he may have. (Tr. 41-43, 59-60).

46. McGee and Shipp rode together to the Municipal Courts building. Once the magistrate signed the warrant, they notified officers on site and proceeded to 1634 Bedford Avenue. (Tr. 43-44).

47. During the ensuing search, police recovered firearms, narcotics and other evidence. McGee was present, but did not participate in the search. (Tr. 44-45).

48. On December 12, 2016, Shipp prepared a criminal complaint charging Pack with conspiracy and possession with intent to deliver heroin based on the evidence found on December 8, 2016. (Defendant Ex. B). McGee did not prepare the charges.

49. The arrest warrant for Pack was issued by a state court judge on December 12, 2016. (Government Ex. 1).

50. On December 31, 2016, McGee and Baker knew there was an outstanding arrest warrant for

Pack. (Tr. 25-26, 85).

## Conclusions of Law

A. <u>The officers had reasonable suspicion to stop the gold Toyota</u>

1. The Fourth Amendment protects the public from "unreasonable searches and seizures." U.S. Const. amend. IV.

2. The government must prove, by a preponderance of the evidence, that "each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *See United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). Evidence obtained from an investigatory stop made without reasonable suspicion must be suppressed as "fruit of the poisonous tree." *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)).

3. A basic premise of the search and seizure doctrine is that searches undertaken without judicial oversight and a warrant issued upon probable cause are "per se unreasonable," subject only to a few specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967).

4. The Supreme Court established one such exception in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), holding that a police officer may conduct a brief, investigatory stop when the officer, accounting for his professional experience, has a reasonable, articulable suspicion that criminal activity may be afoot. The reasonable suspicion standard delineated in *Terry* applies equally to routine traffic stops. *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006).

5. The government has the initial burden to prove that a *Terry* stop is based on reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion is an

"elusive concept," but it unequivocally demands that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

6. Although the Supreme Court has not specifically defined the phrase "reasonable suspicion," the "essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account." *Id.* Even seemingly innocent factors, when viewed together, can amount to reasonable suspicion. *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016).

7. Stopping an automobile based upon at least articulable and reasonable suspicion that either a vehicle or an occupant is in violation of the law is not unreasonable under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). In fact, the foremost method for police officers to enforce traffic and vehicle safety regulations is by acting upon those observed violations. *Id.* at 659.

8. A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004).

9. Reasonable suspicion can be based even upon an officer's mistaken understanding or knowledge of the state's applicable traffic laws. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014).

10. In this case, the officers had the requisite reasonable suspicion to initiate a traffic stop on the gold Toyota on December 31, 2016, because they observed it fail to come to a complete stop at three stop signs, in violation of 75 Pa. Cons. Stat. § 3323.

    B. <u>Search Incident to Arrest</u>

11. It is well-established that officers are permitted to conduct a search incident to arrest. *Chimel*

9

*v. California*, 395 U.S. 752 (1969) (search incident to a lawful arrest is an exception to the probable cause requirement).

12. The officers took Pack into custody pursuant to the valid arrest warrant issued on December 12, 2016. The officers were entitled to search Pack's person while taking him into custody.[5]

C. Inevitable discovery of the drugs and firearm on December 31, 2016

13. Even if there was not a valid arrest warrant, under the inevitable discovery doctrine "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir.1998) (quoting *Nix v. Williams*, 467 U.S. 431 (1984)).

14. Evidence should not be excluded where "the police, following routine procedures, would have inevitably uncovered the evidence." *United States v. Stabile*, 633 F.3d 219, 245 (3d Cir. 2011).

15. In *United States v. Valentine*, the court of appeals explained that headlong flight from the police in a high-crime area provides reasonable suspicion for the police to pursue and investigate, despite the fact that flight is not by itself illegal and could have completely lawful and rational explanations. *Valentine*, 232 F.3d 350, 356 (3d Cir. 2000) (citing *Wardlow*, 528 U.S. at 25-26).

16. Pack's exit from the vehicle upon seeing the officers, and his subsequent flight, gave the officers reasonable suspicion to pursue him.[6]

---

[5] Pack does not argue that police exceeded the scope of a permissible search incident to arrest. (ECF No. 75 at 4).
[6] It was not necessary for the officers to have probable cause to arrest Pack for the crime of escape, as Pack contends. (ECF No. 71 at 12-13).

17. Once Pack slipped on the mud and was tackled, officers were permitted to perform a pat-down frisk for their safety. *See Terry*, 392 U.S. at 27 (officers may conduct a pat down search if there is reason to believe the person is carrying a weapon).

18. The protection of police officers can justify protective searches when there is a reasonable belief that the suspect poses a danger. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Roadside encounters between police officers and suspects are especially hazardous and danger may arise from the possible presence of weapons in the area surrounding a suspect. *Id*.

19. The officers had reason to believe Pack was armed (independent of the arrest warrant) because Pack was in a high crime area and was known to be a member of the 11 Hunnit gang, which was involved in an ongoing feud with the Wavy Boy gang.

20. In summary, Pack's flight from the vehicle gave the officers reasonable suspicion to subdue and search him on December 31, 2016, that was independent from the validity of the underlying arrest warrant. Because the officers, following routine and lawful procedures, would have inevitably uncovered the drugs and firearm, suppression of the evidence is not warranted. *See United States v. Somerville*, No. CR 17-222, 2019 WL 4059028, at *4 (W.D. Pa. Aug. 27, 2019) (denying motion to suppress the cell phones and cash on person after traffic stop and *Terry* frisk, and alternatively holding the evidence would have been inevitably discovered based on a search incident to his arrest).

   D. <u>Defendant's "fruit of the poisonous tree" argument</u>

21. Defendant argues that McGee, Baker and Robey were not justified in executing the arrest warrant because they should have known that Shipp, Messer, Tomer and Montelone improperly entered the 1634 Bedford Avenue residence on December 8, 2016, which tainted

the search warrant and subsequent arrest warrant. Defendant argues that all the evidence recovered on December 31, 2016, should be suppressed as "fruit of the poisonous tree."

22. Defendant's argument relies on a chain of dominoes: (a) officers illegally entered 1634 Bedford Avenue on December 8, 2016; (b) they observed contraband which led to a search warrant; (c) the evidence seized in the search led to an arrest warrant; and (d) the arrest warrant was the basis for seizing Pack on December 31, 2016.[7]

23. The court is not persuaded by defendant's argument. The links between the alleged improper entry on December 8, 2016 (by different officers), and the events of December 31, 2016, are far too attenuated.

24. Under the attenuation doctrine, evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, such as the issuance of a warrant, so that suppression of the evidence is not warranted. *Utah v. Strieff,* 136 S. Ct. 2056, 2061 (2016).

25. As an initial matter, the government is not seeking to introduce any evidence from the December 8, 2016 search in this case. In other words, the government is not seeking to introduce any fruits of the poisonous tree. For this reason, defendant's reliance on decisions such as *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) (rejecting good faith exception and suppressing the evidence obtained in the illegal search of the home), is misplaced.

26. The charges in this case are based solely upon the drugs and firearm found on Pack's person on December 31, 2016. As explained above, the actions of McGee, Baker and Robey on

---

[7] For the purpose of this decision, the court will assume, without deciding, that the December 8, 2016, entry and walk-through of 1634 Bedford Avenue were improper.

December 31, 2016 were lawful. *See Segura v. United States*, 468 U.S. 796, 813–14 (1984) (whether the initial entry was illegal or not was irrelevant because there was an independent source for the evidence being challenged).

27. Further breaking the causal connection, McGee, Baker or Robey did not violate Pack's Fourth Amendment rights on December 8, 2016. The alleged violation (the initial entry and subsequent walk-through of 1634 Bedford Avenue, *see* ECF No. 71 ¶ 30) was committed by other members of the VCRT, i.e., Shipp, Messer, Tomer and Montelone.

28. Defendant recognizes that the search warrant and arrest warrant were "facially valid" and seeks to invalidate them only because the probable cause was wrongfully obtained. (ECF No. 71 at 9).

29. McGee, Baker or Robey were not present when the alleged Fourth Amendment violation occurred and they were not the affiants on the search or arrest warrant affidavits.

30. Defendant's theory, if accepted, would impose a duty on police officers to make an independent judgment about the constitutionality of the actions of their fellow officers, despite the subsequent issuance of a search warrant and arrest warrant by judicial officers.

31. The facts that the officers who committed the alleged violation on December 8, 2016, were part of the VCRT and that McGee assisted, in a clerical capacity, in preparing the search warrant application, do not change that analysis. McGee was not in a position to reasonably evaluate whether the actions of Shipp, Messer, Tomer and Montelone on December 8, 2016, invalidated the arrest warrant issued on December 12, 2016, by a state court judge.

32. Making those kinds of legal determinations is the proper role for lawyers and courts, not police officers. *See Katz,* 389 U.S. at 357 ("the Constitution requires 'that the deliberate, impartial judgment of a judicial officer * * * be interposed between the citizen and the

13

police'") (quoting *Wong Sun v. United States*, 371 U.S. 471, 481—482 (1963)).

33. As noted above, the basic premise of Fourth Amendment doctrine is that searches should be undertaken with judicial oversight. *Katz*, 389 U.S. at 357. Here, a search warrant was issued by a magistrate on December 8, 2016, and an arrest warrant was issued by a state court judge on December 12, 2016.

34. Officers McGee, Baker and Robey were entitled to rely in good faith on the duly issued arrest warrant. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.")

35. The Supreme Court noted in *United States v. Leon* that a situation in which an officer relies on a duly authorized warrant is a "particularly compelling example of good faith." 468 U.S. 897, 920 n.21 (1984). The Supreme Court explained it is the magistrate's responsibility, not the police officer's, to determine whether the allegations establish probable cause and, if so, to issue a warrant. *Id*. at 921. Ordinarily, an officer cannot be expected to question the magistrate's probable cause determination. *Id*. A warrant is a judicial mandate and the officer has a sworn duty to carry out its provisions. *Id*.

36. The most analogous decision located in the court's independent research, regarding whether flaws in an underlying arrest warrant should invalidate a search incident to arrest on that warrant, is *Ahmad v. Hudson County Prosecutor's Office Narcotics Task Force*, No. CV 15-8994 (JLL), 2016 WL 3450819, at *3 (D.N.J. June 22, 2016). In that decision, the court rejected an argument that because the officers were not permitted to arrest him on a civil arrest warrant for failure to pay child support, the discovery of drugs on his person during

14

that arrest amounted to an illegal search. The court explained:

> A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *United States v. Leon*, 468 U.S. 897, 920 n. 21 (1984) (internal quotations marks omitted). [An officer's arrest of a person on an outstanding warrant is] thus a ministerial act that [is] independently compelled by the pre-existing warrant. And once [an officer is] authorized to arrest [a defendant under a pre-existing warrant], it [is] undisputedly lawful to search [that defendant] as an incident of his arrest to protect [the officer's] safety. *See Arizona v. Gant*, 556 U.S. 332, 339 (2009) (explaining the permissible scope of searches incident to arrest).
>
> *Strieff*, ___ U.S. at ____, 2016 WL 3369419 at *4. Thus, because there was a pre-existing warrant for Plaintiff's arrest, the officers had probable cause to arrest him, and, under the search incident to arrest doctrine, had authorization to search Plaintiff's person and area of immediate control for weapons or contraband. *Id.*; *Gant*, 556 U.S. at 339 (search incident [to] arrest doctrine permits officers performing a valid arrest to search a defendant's person and the area within his immediate control for weapons he might use and any evidence of wrongdoing he might conceal or destroy). That the evidence recovered is evidence of a crime other than that for which the warrant was issued is of no moment when that evidence is found on the person of the one being arrested. *Strieff*, ___ U.S. at ____, 2016 WL 3369419 at *4-6.
>
> Plaintiff, in his amended complaint, does not dispute that there was an outstanding warrant for his arrest for failure to pay child support. Thus, he was arrested pursuant to a valid warrant and there was no false arrest here. Likewise, because he was searched incident to that arrest and contraband was recovered as part of that search, the search in this matter was authorized by Plaintiff's arrest and was not an unlawful search. That this lawful search incident to arrest produced two controlled substances in turn provides both probable cause to arrest Plaintiff on drug charges, and probable cause to thereafter hold him on those charges. There was thus cause to both arrest Plaintiff on the outstanding warrant and probable cause to imprison Plaintiff based on the drugs seized on his person.
>
> *Ahmad*, at *3-4.

37. The same analysis governs here. The officers were entitled to rely on the validity of the arrest warrant and had a duty to execute that warrant. When they secured Pack and searched him incident to arrest, they found the drugs and firearm that provide probable cause for the pending criminal charges.

38. The Supreme Court's decision in *Herring v. United States*, 555 U.S. 135, 137 (2014), is also

instructive. In that decision, the Court declined to suppress drugs and guns found during a search incident to arrest even though the underlying arrest warrant had been withdrawn. The Court found that the arresting officer acted in good faith reliance on the existence of a valid arrest warrant based on the negligent representation of a police employee from the neighboring county.

**Conclusion**

Officers McGee, Baker and Robey were entitled to rely in good faith on the validity of the arrest warrant when they searched Pack incident to his arrest. In the alternative, they would have inevitably discovered the drugs and firearm after Pack's flight from the gold Toyota. Suppression of the evidence found on Pack's person on December 31, 2016, is not warranted. In accordance with the foregoing, the motion to suppress evidence will be DENIED.

An appropriate order will be entered.

December 12, 2019

BY THE COURT:

/s/ *Joy Flowers Conti*
Joy Flowers Conti
SeniorUnited States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | CRIMINAL NO. 17-43 |
| | ) | |
| | ) | CHIEF JUDGE JOY FLOWERS CONTI |
| | ) | |
| vs. | ) | |
| | ) | |
| **SIDNEY PACK,** | ) | |
| | ) | |
| Defendant, | ) | |

## **ORDER**

AND NOW, this 12th day of December, 2019, for the reasons set forth in the accompanying Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that the motion to suppress evidence filed by defendant SIDNEY PACK (ECF No. 58) is **DENIED**.

A status conference will be scheduled after the court resolves Sidney Pack's other outstanding motion (ECF No. 72).

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge